May it please the court, the respondents are a member of a particular social group that is family members of a police officer in El Salvador who wouldn't be corrupted by the gangs and a certain group of the family members were killed in a short amount of time. In Hernandez Montiel v. INS 225 F 3rd 1084 at 1093 groups whose members show immutable characteristics such as familial relations or a particular social group in this case. Despite the respondents' reliance on a matter of AK. Also Lopez Soto v. Ashcroft 383 F 3rd 228 4th Circuit 2004. Counsel 383 F 3rd 228 did you say? Yes, that's a 4th Circuit case. It is persuasive authority for your consideration. In terms of a particular social group, your analysis should not focus on visibility to the naked eye. However, the circuit recently has said it is a visibility to the perception of the persecutors. Enriquez Rivas v. Holder 707 F 3rd 1081. In this case, it was the corrupt police who were dressed up in uniforms of the National Police, went in trucks of the National Police, killed the family members of one of the respondents. Counsel, could I ask about that? There's several tragedies here. The first was in January of 2005, if I understand that record correctly. And that was Ms. Rivas' family members, aunt and uncle, who were murdered. And we don't know who committed that murder, right? That's correct. Okay. And now when you speak about the white pickup trucks, that incident that occurred in February, I think a month later of 2005. Those folks, three cousins and a neighbor, three cousins and a spouse and a neighbor, affiliated with Mr. Tamakis' family. I think his cousins. Yes. So which family are we talking about? I'm talking, my last point was particular to Roberto Tamakis. Right. So I didn't ask a very good question. I'm sorry. I apologize. Well, you shouldn't apologize for my question. But what I'm trying to get at is when we talk about a particular social group, and in this case you're seeking asylum based upon, or your clients are, based upon this familial association. Yes. But what I'm trying to get at is that we do look at this from the point of the persecutors. And these folks have different last names. And I don't know what the last names were of the aunt and uncle killed in the first incident or who killed them. So I'm trying to figure out, are you just focusing on the white pickup truck incident? No, I'm focusing on both because it was so close in proximity to time. Okay. And. But we have to know that this would have been on account of. Yes. Right. Okay. And so sometime after the fact, Mr. Tamakis learned he was told about this cousin who refused to take a bribe in the police department. That's correct. Okay. So what's the strongest showing you've got that there's a nexus between that information and these tragedies? The strongest nexus would be the fact that the familiar relationship, that the fact that Tamakis' cousin was a police officer in the National Police. They are targeted. The State Department has shown that, you know, there is right now an active, shall we say, war between the government and the gangs. And one of the main front lines of that, the main instrument of the state in that war is National Police. Was there, do we have evidence that that war was going on in 2005? You just said right now, but you mean at the time. At the time as well, Your Honor. Okay. And so what's the strongest nexus between the police officer, family member, and the January 2005 killings of Ms. Rivas' aunt and uncle? That would be his testimony, which he related to as the reason why he came. At the time, Mr. Tamakis didn't know why exactly, but because of the, the cousin didn't want to relate to Mr. Tamakis at the time why it was happening. Maybe, I don't know why he didn't, but he found out later when he fled the country. He just knew that they were being threatened. But what was the timing again with respect to the relative police officer and Tamakis' warning of his unwillingness to participate in police corruption? The timing to that vis-a-vis the death of the three cousins. Can you explain that a little bit better to me? Yes. The police officer resigned, I believe, about a month before the killings happened. In the administrative record, that would be administrative record 42 to 46, Mr. Tamakis claimed the killings occurred because Ernestos refused to go around with the corruption of the national police. So that was the administrative record of 42. Let me see. I don't have the timeline as to when he told them that, but that was the, it was around that same time when he resigned from the police force. He just left. You're saying it occurred before? Right. Okay. Was there testimony or evidence of any kind that there was a threat to the family members? Yes, there was. At the administrative record 257 and 258, there was, I'm sorry, 252, there was a threat to the families, and they told one of the surviving cousins, Gloria, at the killing in February 12, 2005, that we will come back and find the rest of your family to kill them. That would be administrative record 251 and 252. And do we know anything more about why? Were they being killed because of the cousin not taking a bribe, or what have we got that ties this to a protected ground? At the time that the killings occurred, the respondent didn't know why it occurred, but then he made investigations afterwards, which he related to in his testimony. And the testimony at 252 or in that vicinity is where I look for your evidence that this is, that there's a nexus? Yes, Your Honor. All right. I have a question concerning the credibility determination that was made by the immigration judge. In what way was the immigration judge's decision there unsupported, unsupportable? The immigration judge, in my view, the testimony was unsupported because she didn't take into account that family history is important. Now it was BINS 217F646, 9th Circuit, 2000. And also, she didn't take into account all that was happening to the family. She found the killings there. It was a family tragedy. She found it to be due to the general violence, but not to a nexus of police corruption or imputed political opinion, which would be the refusal of the cousin and then, I'm sorry, which the familial group would be family members of honest police officers in El Salvador. Do you want to save? You've got almost a minute. Do you want to save it for rebuttal? Yes. Thank you, Your Honors. We'll give you the full minute. Good morning, Your Honors. Geoffrey Elmendian, U.S. Department of Justice for the Attorney General. May it please the Court. Your Honor, no record evidence compels a finding that the petitioners were targeted on account of any protected ground that could be attributed to them. I don't think the issue is whether a family can be a social group, but whether they proved or the record shows compels a finding that they were persecuted or will be persecuted on account of the fact that some distant relatives of theirs may have been killed, and I say may. Counsel, I have a question about that, if I could take you right to it, because I want to make sure you have a chance to respond. The record, if I'm reading it correctly, tells me that the IJ had concerns, as he put it, expressed concerns about Mr. Tamakis's credibility. The BIA incorporated that, but really didn't rely on that, and instead, I think the gist of the ruling is that even if this is all true, you just haven't shown nexus. Is that fair? Yes. Okay. I'm sorry, I didn't quite hear. Could you take that? Yes, the IJ expressed concerns about Mr. Tamakis's credibility, but didn't rely on that, and said even if everything he said is true, he hasn't shown nexus. My question really goes to Ms. Rivas, because my understanding is there's no negative credibility finding as to Ms. Rivas. Is that right? Yes. Okay. So the problem I've got is when I read the transcript, it looks to me like the IJ, I don't mean to be pejorative, but I think cut off Ms. Rivas' testimony and said don't testify about cumulative matters that Mr. Tamakis has already testified about. So the problem is that there's an absence here, your position, I think,  What do we do about the fact that Ms. Rivas wasn't allowed to complete her testimony? There's been no complaint to the board or in the briefing to that effect. I think the problem is I think she had a full opportunity to talk about her aunt and uncle and what happened to them, and her testimony very consistently was she doesn't know who did it and she doesn't know why, and that's a failure of proof. Even if she's taken as credible, that doesn't get us to showing that what happened was on account of any particular reason, whatever we want to call it. So I think that largely goes also to Mr. Tamakis' issue that whether or not the IJ had problems with his story that certain aspects of it just didn't make sense to him. Taking it at face value. Well, for example, what didn't make sense to him was that the mother, he said, who passed down this information supposedly was dead. Well, the death certificates that were introduced, two of them showed the decedent to be the mother of the cousins who they were saying died. Well, I don't know much of the facts of this. I have a law clerk who speaks Spanish. She read the death certificate and said it doesn't say the mother died. It was someone else. Do you know what the death certificate really says that that mother died? My high school Spanish has long since left me, but what I do know is that the translation that was submitted was submitted by the petitioners, and if there was an inaccuracy to it, there was ample opportunity to correct that, and it's not up to us now to try and interpret the Spanish language document. But there are other problems with the documents in that Mr. Tamakis is talking about the death of cousins who he can't even name properly. Two of the names he gets wrong. He gets all of their ages wrong. But the credibility finding is not adopted by the board. It refers generally to it, but I would submit, Your Honor, that even if we take his testimony at face value, it doesn't get us over the chasm to a nexus, to a showing that whatever happened to these people happened on account of a reason that's attributable to the petitioners. Well, there is the council, the opposing council, said that there's testimony that the persecutors or whatever, whoever these people were who killed one part of the family, said we're going to come back and kill the rest. That would seem to show that there was a nexus to being a member of a family. Well, my answer, Your Honor, there was never any threat to the two petitioners before the court. That what was said to you... They're members of the family. Well, if we don't know who said it or we don't know why the killing occurred, then the fact we'll come back and get you standing alone doesn't mean anything. No, we'll come back and get members of the family. Right, but if we don't know... Well, it depends on what you consider a nexus to. To what? To being a member of a family group. That would be evidence of a threat because of membership in a family group. I would disagree, Your Honor, because we don't know who the people were. Well, regardless of who they were, I mean, it doesn't matter who they are. If they make a threat to a member, to kill all members of a family, whoever it is... Well, I don't think that translates to anybody who might be related to the member of a family. Well, whatever it translates to, what's the difference who made the threat, whether it was the government, not the government, what's the difference? If it's a group the government isn't controlling, it makes a threat. Well, if we don't know who they are, we don't know who's controlling them, whether the government could control them. If it's not the government, who are they? Is it rogue bandits? There was a lot of testimony, a lot of admissions that these people could have been criminals. And if we're dealing with what could have been and what might have been and how we could read the evidence in the first instance, what we're left with is the evidence does not compel a contrary conclusion to that reach below. Counsel, just to follow up on Judge Reinhart's questions, there are some cases where we talk about there isn't a nexus because it could have been a drug deal or a threat that could have really been inspired by criminal activity as opposed to, say, an imputed political opinion, for example. And then there's other cases that indicate that a family under certain circumstances can be a particularized social group. And so my question is, what if this had been a drug deal or some criminal activity? I think that's what Judge Reinhart is getting at. What if they had been criminals, but they made a threat to come back and kill the whole family, and that would include Mr. Tamakis and Ms. Rivas? What's the case law tell us about where we draw the line there? Well, then we get into issues of if they're not government, then whether or not the government is able to control them. Is there any acquiescence? And we can deal with it in a hypothetical way, but on these facts, the petitioners didn't develop a record to show that this is a group that the government couldn't control. If you don't know who they are or what their motives are, then we're left just to guess. And if we're left just to guess, then the burden of proof is not met. Well, there is evidence, isn't there, that at least one of the killings was the testimony, true or not, was that they were wearing police officer uniforms or white uniforms. Well, that statement was a multigenerational hearsay statement that the IJ was not compelled to accept. It was somebody told an aunt who told the mother who told Mr. Tamakis. That's fairly attenuated, particularly where we are now. That's not a compelling finding, let alone even a convincing one. Well, there's no other evidence as to why anyone would say we're going to wipe out a family, except the fact that there was, I'm not vouching for the truth of it, I'm just saying what's in the record. There's evidence that there was a threat made to this cousin because he wouldn't join in the corruption in the police department. And then you have what you call a multigenerational testimony that the people who did this were in the uniforms of police officers. And no other hint of a reason why anyone would want to wipe out this family. Well, Your Honor, there's no evidence at all as to when Ernesto, the police officer, was threatened. There's no evidence of that. He never testified that the cousins who were killed were killed because of anything that was threatened to him. There's no testimony as to any connection. There is testimony that some of the last names involved are common. I don't know what the reason was, but if I don't know what the reason was and we're left to guess what could have possibly happened, then there's no compelling evidence. Counsel, to that extent, I think many of your points are well taken, and it comes back to the problem I've got. I think there's some holes in the record where we don't have evidence, as opposed to having evidence from which a negative finding could be made. So why shouldn't I be concerned, or should I be concerned, that Ms. Rivas was, I'm going to say, cut off in her testimony and not allowed to finish? Again, I'm not aware of any information that she – there's no claim I would have added X or Y or Z that would have made any difference. There were no contemporaneous objections. There was nothing – So you think they haven't preserved this argument on a field? Not in the least, no, Your Honor. My time is winding down, unless there are any other – It's wound. Pardon me? It's wound. Oh, yes. Oh, I'm in overtime. I didn't realize. Your Honors, the Attorney General would ask that the decision below be affirmed. Thank you. Thank you, Counsel. Counsel, you have one minute. And in conclusion, Your Honors, there is a nexus there because of the family history and the threats to the family by peoples who most likely could have been members of the National Police, albeit rogue, but in El Salvador and at the time, there was substantial corruption in the National Police Force and an active war between the gangs and the police force in the national government, and the national government would be unwilling and unable to control these forces. Thank you, Counsel. Thank you. The case just argued will be submitted.
judges: Settle, REINHARDT, CHRISTEN